UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT FLORIDA

FILED by _PG_ D.C.

JUL 2 6 2017

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

TIMOTHY THOMAS OGRIS,

EDWARD PAGAN                           CIVIL ACTION

Gregory Mitchell

individually and on behalf of Thoes similarly Situated

Plaintiffs;

cat/div  550/1983/FTL
Case # _____
Judge _____  Mag WHITE
Motn Ifp  yes  Fee pd $  0
Receipt # _____

Vs.

BROWARD COUNTY COMMISSIONERS;

In their official and individual capacities

under color of law as Broward County commissioners;

BROWARD COUNTY SHERIFF Office ET. AL.,

in its official capacity

SCOTT ISRAEL

in his official and individual capacities

under color of law as Sheriff ,

ARMOR ET. AL.,

in its official capacity

CORPORATE EXZECUTIVES,

in their official and individual capacities

Under color of law as Armor EXZECUDIVES

MONIQUE Mullin,

in her official and individual capacity

under color of law as armor Medical director

DOCTOR PAPPION
in his official and individual capacity
under color of law as armor medical doctor;

NURSE PRACTIONER TAO
in his official and individual capacity
under color of law as armor medical nurse;

NURSE PRACTIONER RAQUIN DIN
in his official and individual capacity
under color of law as armor medical nurse;

Defendants

COMPLAINT — JURY DEMAND

INTRODUCTION

#1.) Plaintiff is a mentally incompetent person
who is being detained in the Broward County Jail who
is being refused Hepatitis c treatments and Psychological
treatment in violation of Plaintiffs Due Process rights

that are afforded to him by 5Th and 14TH Emendments
of the United States Constitution.

2) Defendants are delibert indifferent to mental
incompetent Plaintiff searious medical needs and others
Simarily Situated, and are failing to treat to cure plaintiff
and others simarily situated life threatening illness, of
Chronic hepatitis-c virus ("HCV"), which is found to be
directly linked to mental illness and incompetency.

3) Defendants are practicing discriminatory denial
of medical services and are dilibertly indifferent to
("HCV") infected incarcerated persons as compared to
("HIV/AIDS") infected incarcerated persons.

4) Defendants discriminatory practices of
denial of medical services to ("HCV") incarcerated
persons promotes the Spread of ("HCV")
life threatening virus and endangers the Community
and public, causing a searious Public health concern.

5) Defendants, ARMOR MEDICAL ("HCV")
treatment protocol is conflicting and is contrary
to AMERICAN ASSOCIATION FOR THE STUDY OF
LIVER DISEASE (AASLD)/INFECTIOUS DISEASE
SOCIETY OF AMERICA (IDSA) Professional Medical
Community Standard of care for treatment of ("HCV")

6) Defendants, ARMOR MEDICAL ("HCV") treatment protocol purports to treat incarcerated persons infected with ("HCV") only if the incarcerated person has a fibrosis level of (4) on a four point scale — subject to the exclusive approval of ARMOR MEDICAL EXECUTIVE ADMINISTRATORS', BROWARD COUNTY COMMISSIONER'S', BROWARD COUNTY SHERIFF SCOTT ISRAEL.

7) Defendants, ARMOR MEDICAL policy treatment protocol for ("HCV") is a direct admittal of defendants denying incarcerated persons with ("HCV") professional medical community standard of care pursuant to (AASLD/IDSA) guidelines with diret acting anti-viral (DAA) 12 week oral medications to cure ("HCV").

8) The issues before the court is (1) weather the plaintiff who is declared incompetent to proceed in criminal (cases 13-009880CF10A /14-016955CF10A) in broward county florida, who does not qualify for involuntary commitment, do to the fact that plaintiff does not present a danger to his self or the community, or weather plaintiff can be detained in county jail and be denied treatments to cure plaintiff of serious medical needs ("HCV") re: denied psychiatric treatment? (Jackson vs. Indiana 406 U.S. 715 (1972))

9 ) (9) Also before the court is weather the Defendants may impose a lower "non-medical Corrections Standard of Care" to replace the (AASLD/IDSA) Professional medical community Standard of care for the treatment of ("HCV") positive incarcerated persons?

10) This is a class action that seeks declamatory and injunctive relief and temporary restraining order under 42 U.S.C. 1983 for Violations of the Fifth-Eighth and Fourteenth Amend to U.S. const., as a result of the deliberate indifference of defendants to the Searious medical needs of the plaintiffs and all others Similarly Situated refusal to treat to cure incarcerated persons of ("HCV").

11) The members of the Class; (a) Persons who are Currently incarcerated who are infected with ("HCV") and have 12 weeks or more of incarceration left; (b) Persons who are not infected, or have been Cured and wish to avoid being infected or re-infected with ("HCV") by being exposed to ("HCV")-positive in-Carcerated persons; (c) persons in the community who are not infected with("HCV") and who wish to avoide being infected by prior incarcerated persons who were released from the Broward County Jail with-out being treated to cure ("HCV").

12) This is a class action lawsuit that seeks declaratory and injunctive relief under 42 U.S.C 1983 for violations of the equal protection clause of the Fourteenth Amendment and legal relief under § 504 of the Rehabilitation Act of 1973 (§ 504) and title II of the American with Disabilities Act as Amended (Title II, A.D.A) for discriminatory denial of the medical services in accordance with the Professional Medical Community Standard of care because of their ("HcV") disability.

## JURISDICTION

13) This court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C § 1331 (Federal question Jurisdiction) and 1343 (civil rights Jurisdiction).

14) This court has jurisdiction as authorized by 28 U.S.C. 2283 & 2284, Rule 65 of Fed. R. Civ. P to grant plaintiffs claims for injunctive relief.

15) This court has jurisdiction as authorized by 28 U.S.C. 2201 & 2202 to grant plaintiff claims for declatory relief.

## VENUE

16) Venue is proper pursuant to 28 USC 1391 (b)

## PLAINTIFFS

17) Plaintiff TIMOTHY THOMAS OGRIS, is currently and at all times mentioned herein was and is being detained in the Broward County Jail which is located north broward Bureau, Po Box 407037, fort lauderdale florida 33340.

18) Plaintiffs similarly situated are all persons who are detained in the broward county Jail, free world citizens, persons in the public and who reside in the community, who have ("HCV") (or) who do not have ("HCV") (or) who have been cured of ("HCV") and who do not want to be infected (or) re-infected with the Hepatitis -C Virus

## DEFENDANTS

19). BROWARD COUNTY Commissioners of broward county Florida who are leagly responsible for the over all operations of all its County agencies and contracted vendors (ARMOR) who provides medical services to persons who are detained in the broward county Jail.

page 7 of 67

20) BROWARD COUNTY COMMISSIONERS
know or should reasonably know that the AMERICAN
ASSOCIATION STUDY of LIVER DISEASE (AASLD)
and the INFECTIOUS DISEASE SOCIETY OF AMERICA
(IDSA) sets the professional medical community
standard of care for Hepatitis C virus and has
a guidance panel web site established, to which is
updated regularly; web site; (W.W.W. hcvguidlines.org)

21) BROWARD COUNTY COMMISSIONERS know
or should reasonably know that its medical vendor,
(ARMOR) ("HCV") treatment protocol is conflicting
and contrary to (AASLD/IDSA) professional medical
community standard of care, for Hcv.

22) BROWARD COUNTY COMMISSIONERS are
deliberatly indiferent to plaintiffs scarious medical
needs, and all others similarly situated and is
promoting the spread of a "fatal silent epidemic" life
threatening virus, endangering the public and
community, causing a very searious public health
concern, and is failing to intervene to correct
its medical vendors dificiencies.

23) SCOTT ISWEL, Broward county sheriff
is the elected sheriff of Broward County and is
legally responsible for managing and supervising

all its employees, and county contracted medical vendor (ARMOR). Broward County Sheriff Scott ISRAEL knows or should reasonably know that the (AASLD/IDSA) sets the Professional medical Community Standard of Care for ("HCV) and has a guidance panel web site established to which is updated regularly.

24) SCOTT ISRAEL knows or should reasonably know that its medical vendor (ARMOR) ("HCV") treatment Protocol is Conflicting and Contrary to (AASLD/IDSA) Professional medical Community Standard of Care for ("HCV)

25) SCOTT ISRAEL knows or should reasonably know that mr ISRAEL actions are deliberatly indifferent to plaintiffs Searious medical needs, as well as all others similarly situated, and that mr ISRAEL actions are promoting the Spread of a "Silent Epidemic" life threatening virus, Endangering the public and Community Causing a very Searious public health Consern, and is failing to intervene to correct its medical vendors dificiencies.

26) (BROWARD) COUNTY SHERIFF CORPORATE Office is located at 2601 West Broward Blvd; Fort lauderdale florida 33312.

27) ARMOR medical is a private corporation

who has contracted with Broward County to provide the delivery of quality, professional, reasonable health care to pre-trial detainees, sentenced individuals, Ice detainees, Juviniles, federal detainees of the Broward County Jail.

28) ARMOR medical is legally responsible for following federal guidlines in delivering medical services to all persons it treats for medical issues, and is also legally responsible for continious on going medical training (continuing education), management, and supervision of all its employees

29) ARMOR medical knows or should reasonably know, that the (AASLD/IDSA) sets the professional medical community standard of care for ("HCV") and has a guidance panel web site to wich is up-dated regularly.

30) ARMOR medical knows or should reasonably know that it's ("HCV") treatment protocol is conflicting and contrary to (AASLD/IDSA) professional medical community standard of care for ("HCV")

31) ARMOR medical knows or should reasonably know that its actions an failing to bring its ("HCV") treatment protocol in conformiaty with the (AASLD/IDSA)

Professional medical Community Standard of Care for ("HCV") treatments would constitute delibert indifference to plaintiff Searious medical needs, as well as all others Similarly situated and that its actions would ommote the Spread of a "Silent Epidemic", life threatening virus, Endangerng the public and Community causing a very Searious public health consern. All its EXECUTIVE employees are liable for failing to intervene.

32) ARMOR medical Corporate offices are located at 4960 S.W. 72nd Ave. Ste 400, Miami florida 33155.

33) MONIQUE MUllIN Armor medical director is responsible for managing and Supervising all its employees and for approving medical Services and treatments for all persons entering the Broward County Jail, or for remaining in the Broward County Jail. MONIQUE MUllIN knows or should reasonably know that the (AASLD/IDSA) sets the Professional medical Community Standard of Care for ("HCV") and Has a guidance panel web site established to which is updated regularly.

34) MONIQUE MUllIN Armor medical director knows or Should reasonably know that Armor Medical ("HCV") treatment Protocol is Conflicting and Contrary is (AASLD/IDSA) Professional medical Community Standard

of care for ("HCV")

35) MONIQUE MULLINS knows or should reasonably know that ARMOR medical ("HCV") treatment Protocol is delibert indifferent to plaintiffs searious medical needs, as well as all others similarly situated, and that the policy promotes the spread of a "Fatal Silent Epidemic" life threatening virus, endangering the public and Community Causing a very searious public health Concern, and is failing to intervene to Correct its policies deficiencies.

36) DOCTOR PAPPILON, of Armor medical is responsible for dispencing medical services for its Employer ARMOR MEDICAL. Doctor Pappilon knows or should reasonably know that the (AASLD/IDSA) sets the medical community standard of care for ("HCV") and has a guidance panel web site established to which is updated regularly.

37) Doctor PAPPILON of armor medical Doctor knows or should reasonably know that Armor medical ("HCV") treatment Protocol is conflicting and contrary to (AASLD/IDSA) Professional medical Community standard of care for ("HCV").

38) DOCTOR PAPPILON of armor medical

knows or Should reasonably know that Armor medical ("HCV") treatment protocol is delibert indifferent to plaintiffs Searious medical needs, as well as others Simarily Situated, and that the policy Promotes the Spread of a "fatal Silent Epidemic" life threatening virus Endangering the public and Community Causing a Searious public Health Concern, and is failing to Intervene to Correct its policies defficencies.

39.) Nurse practioner TAO of Armor medical is responsible for dispensing medical services for its Employer ARMOR MEDICAL. Nurse practioner knows or should reasonably know that the (AASLD/IDSA) Sets the medical Community Standard of care for ("HCV") and has a guidance panel web Site established to which is updated regularly.

40.) Nurse practioner TAO of Armor Medical knows or Should reasonably know that ARMOR medical ("HCV") treatment Protocol is Conflicting and Contrary to (AASLD/IDSA) Professional medical Community Standard of care for ("HCV")

41.) Nurse practioner TAO of Armor Medical knows or Should reasonably knows that ARMOR medical ("HCV") treatment protocol is delibert indifferent to plaintiffs Searious medical needs, as well as others Simarily Situated, and that the policy promotes the Spread of

a "fatal Silent Epidemic" life threatening virus
Endangering the public and community Causing
a Searious public Health Consern, and is failing to
intervene to correct its policies defficencies.

42) Nurse practioner RAQUIN DIN of
ARMOR medical is responsible for dispencing medical
Services for its employer ARMOR Medical. Nurse
practioner knows or Should reasonably know that the
(AASLD/IDSA) Sets the medical Community Standard of Care
for ("HCV") and has a guidance panel web-site established
to which is updated regularly.

43) Nurse Practioner RAQUIN DIN of
Armor Medical knows or Should reasonably know that
Armor Medical ("HCV") treatment protocol is Conflicting
and Contrary to (AASLD/IDSA) Professional Medical
Community Standard of care for ("HCV").

44) Nurse practioner RAQUIN DIN of Armor
medical knows or Should reasonably knows that Armor
Medical ("HCV") treatment protocol is delibert indifferent
to plaintiffs Searious medical needs, as well as others
Simarily situated, and that the policy promotes the
Spread of a "fatal Silent Epidemic" life threatening
Virus Endangering the public and Community Causing
a Searious public Health consern, and is failing to

intervene to correct its policies defficiencies.

45) Plaintiff would state each defendant As listed herein is being sued in their official and individual capacity. At all times mention herein this Complaint each defendant acted under color of state law.

46) Plaintiff would also state, that plaintiff does not know all the Defendants full names, or addresses, and suspects that the complaint will be amended with the information as the plaintiff recieves the information.

## CLASS ACTION ALLEGATIONS

47) Plaintiff brings this action on behalf of them-selves, and others similarly situated, (the Class) pursuant to Fed. R. Civ. P. 23 (a) and 23 (b)(7).

48) Plaintiff seeks to represent the following Class and Sub-classes on claims for declaratory and injunctive relief and damages:

(a) All persons (male and female) detained in the Broward County Jail with 12 weeks or more remaining or their Sentence; who test ("HCV") positive by RNA test and not only anti-bodies test, and who do not "opt-out"

of ("HCV") treatment, required by the current (AASLD/ IDSA) Guidelines. Erickson vs. Pardus, 551 U.S. 89, 90 (2007).

(b). All currently incarcerated persons who are un-infected, have been cured, or not aware of their ("HCV") Status, who are fearful of being exposed to ("HCV") because of Broward County and ARMOR policies and Practices that make it impossible to know if any other incarcerated person's whom they come in Contact are ("HCV") positive, or not. HELLING vs. McKinney 509 U.S. 25, 33 (1993).

(c) All persons in Public and the Community who are un-infected, have been cured, or are not aware of their ("HCV") Status, who are fearful of being exposed to ("HCV") because of Broward County and ARMOR policies and Practices (HIPPA) that make it impossible to know if any other released incarcerated persons whom they come in contact are ("HCV") positive, or not. HELLING vs. McKinney 509 U.S. 25, 33, (1993).

49) Plaintiff seek declatory and injunctive relief to enjoin Defendants actions, policies and practices that infringe on their rights, impose discrimi-natory denial of medical Services in accordance with the Professional Community Standard of medical care

because of their disability, of Hepatitis C, and seek prospective, equitable relief of the 12 week DAA cure per the AASLD/IOSA Professional medical community standard of care, and on going screening for ("HCV").

50) The requirements of Rules 23 (a) are met by this action:

51) NUMEROSITY - under Fed. R. Civ. P. 23 (a) (1): The precise number of incarcerated persons in the class and their identity are within the control of Defendants, and estimated by the defendants are 10 to 35% of the General Jail population. (see Health Svcs, Chronic Hepatitis C Management and Proceedures). All incarcerated persons and free world persons in the public and community face the danger of potential imminent infection from untreated HCV positive incarcerated persons or the recently released untreated HCV positive persons.

52) COMMONIALITY - Under Fed. R. Civ. P. 23 (a) (2): Questions of law and fact are common to the class, including but not limited to: (1) the nature and Scope of the safer, more effective (AASLD/IOSA Professional medical standard of care is common to all class members); (2) weather

the Broward county, Broward County Sheriff
office, ARMOR medical policy preventing "HCV"
treatments using non-medical barriers must be
replaced with the AASLD/IDSA Professional
medical community standard-of-care is coman to
the class; (3) Weather the Broward county, Broward
County Sheriff, ARMOR refusal to adhere to the AASLD
IDSA standard-of-care violates the 5TH-8TH-14TH
Amendment is comon to the class; (4) the Commonality
of declatory and prospective equitable relief.

53) TYPICALITY - Fed. R. Civ. P. 23 (a) (3): Plaintiffs
Claims are typical of the Class members because Plaintiffs
and all Class members were and still are being injured
by the Same Wrongful policy and practices of Defendants
as described in this Complaint. Plaintiffs Claims arise from
the Same practices and coarse of conduct that gives
rise to the claims of the class members and are based
on the Same legal theories and factual questions relating
to the AASLD/IDSA Proffessional medical Community
standard of care.

54). REPRESENTATIVENESS - Fed. R. Civ. P. 23 (a) (4):
(1) Plaintiffs will fairly and adequately protect the
interests of the class. (2) Plaintiffs have no interests
that are contrary to or in conflict with thoes of the
Class they seek to represent. (3) Plaintiffs need to be

represented by competent and skilled counsel who's intrests are aligned with the intrests of the Class. (4) Relief concerning Plaintiffs rights under the laws herein alleged and with respect to the Class would be proper. (5) Defendants have acted or refused to act with respect to the Class, thereby making appropriate final injunctive relief or corresponding injunctive relief with reguard to Class Members as a whole and certification of the Class under Rule 23 (b)(2) proper;

55) SUPERIORTY - Fed. R. Civ. P. 23 (b)(3); (1) A Class-action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members of the class is impracticable. (2) The number would prove unduly burdensome and inefficient for the court and parties. (3) Because a common set of facts, grievances and remedies pre-dominate over individual issues, individual litigation increases expenses to all parties, and better manage-ment of consistent adjudication and relief by a single court is in the interest of all parties. (4) Conduct of this action will protect the rights of all class members and promote judicial efficiency and consistency. Notice can be provided to class members by U.S. mail, and posting notices in the Broward County Jail.

56) These common questions predominate over any questions affecting only individual Class members. Defendants have acted and refused to act on grounds generally applicable to the class so that final declaratory and injunctive relief would be appropriate to the class as a whole.

57) Plaintiffs have a strong personal interest in the out-come of this litigation, and they need to be represented by competent counsel who will adequately and fairly protect the interests of the class.

58) A class action is superior to any-other available method for a fair and efficient adjudication of this controversy, and will avoid mootness argued by Defendants. Separate actions by individual members of the class would create a risk of inconsistent or differing adjudications and delay the ultimate resolution of the issues at stake.

FACTS

59) At all times relevant to this case, Plaintiffs Timothy Thomas Ogris who's (deemed incompetent by criminal court of Broward county), Gregory Mitchell (county sentenced inmate), Edwin Ragan (pre-trial

detainee) all who are detained in the Broward County Jail.

60) Timothy Ogris, Gregory Mitchell, Edward Pagan all have requested HCV treatments to Cure HCV, and all defendants Listed herein have denied treatments to all Plaintiffs.

61) Timothy Ogris, Gregory Mitchell, Edward Pagan have exhausted all Administrative Grievences, Remedys.

62) In 1990 Timothy Ogris was diagnosed with Hepatitis-C virus. (HCV).

63) On 7-14-2013, Timothy Ogris was arrested by the Wilton manors police dept on the allegations that the Plaintiff entered the back yard of a residence where a refrigerator was located out Side.

64) Ogris is accused of removing two bottels of Michlobe golden draft beers from out of refrigerator valued at $4.00 and an electric leif blower valued at $50.00.

65) Ogris was charged with Burglary of an unoccupied dwelling, felony petit theft, Possession

of Marijuania Less then 20 grams, Possession of drug parphernilia. (see broward county clerk of court case 13-009880 CFIOA)

66) On 7-14-2013 Ogris was brought to the broward county Jail to be detained. to awaite trial on criminal charges.

67) In 2013, while Ogris was in the broward county Jail Ogris began to experience chronic pain, Major Migrain head-aches, Joint pain, Kidney Pain, Urination Problems, digestive problems, acid refux, bowel muvement Problems, and developed chronic fatique, dermatobgic Problems, chronic Iching and developed a timor on (R) kidney, under (R) arm, and left Skull.

68) Ogris also became chronically depressed Paranoid, and Psychotic, and began to experience alot of anxiety.

69) Ogris began to look into the hepatitis c virus, and discovered that the virus is directly linked to all of the symptoms.

70) Broward County Sheriff office, and ARMOR, Knew Ogris had the Hep-c Virus As Early

as 1991.

71) Ogris began to write medical requests and grievences to the broward County Sheriffs office, Armor Medical, and made complaints to Attorney Chris Clony. Specifically requesting ARMOR Medical to treat to cure Ogris of HCV.

72) Armor, Medical Nurse Practioners had Ogris Sign medical releases of information to obtain medical records from a number of other institutions and requested blood to be taken from Ogris.

73) Blood tests Confirmed Ogris has Chronic Hepatitis-C virus infection. Blood levels of (ALT) and (AST) Showed abnormal levels with increased elevated ranges.

74) Armor Medical, Doctor Pappilon refused to treat Ogris to cure of Chronic hepatitis c virus.

75) Armor Medical Doctor Pappilon informed Ogris that the treatments to cure Chronic Hepatitis c Virus is ($90,000.00) Dollars.

76) Armor Medical Doctor Pappilon informed

Ogris that the Doctor has to submit the request to cure ogris of the ("HCV") to ARMOR MEDICAL Administrative Exzecutives, who in turn reviews the request with BROWARD County Commissioners, And Head Sheriff SCOTT ISRAEL

77) Armor Medical Doctor Pappilon informed Ogris that Armor Medical Administrative Exzecutives, Broward County Commissioners, Broward County Sheriff Scott ISRAEL all denied ogris costs to treat to cure ogris of Chronic HCV.

78) Upon Information and belief, Ogris believes that Armor Medical Doctor Pappilon told ogris the truth where Based on the Contract Armor Medical has with Broward County, the Contract States the following,

If any standard of care or treatment Protocol changes or evolves in any material respect, or if any new Medication or therapy is introduced to treat any illness, disease or Condition, and if such change, as described in either (i) or (ii), materially increases the cost to armor of providing healthcare

Services hereunder; then Armor and
the Broward County, Broward County
Sheriffs office will meet to negotiate
compensation or service requirement
changes. the parties agree to meet
and negotiate in good faith within
30 days following the giving of notice
by one party to the other party of
a change. (weather such change is
Anticipated or implemented).
(see Board of County Commissioners Contract)
(with Armor)


79) Armor Medical Doctor Pappilon further
informed Ogris that Armor will only provide treatments
to cure plaintiff of Chronic Hcv if Plaintiff has a
fibrosis score of #4. Pappilon told Ogris even then
if this was the case, the jail would release Ogris
from custody before Armor or the county spends
the #90,000.00 to treat to cure Ogris of Chronic
Hcv.


80) Armor Medical, Broward County Commissioners
Broward County Sheriff Scott ISRAEL, Doctor
Pappilon denied Plaintiff Ogris treatments to
cure Ogris of Chronic Hcv, and were delibert
Indifferent to Plaintiff Ogris serious medical need,

Violating Plaintiff Ogris Due process rights Pursuant to the 5th, 6th, 8th and 14th Amend. U.S. Const.

81) Armor Medical Doctor Pappilon informed Plaintiff Ogris, that Armor medical will only draw Ogris blood Every 90 days and will monator his (ALT) (AST) levels, And will order ultra Sounds yearly, to monator Fibrosis levels.

82) Due to the Severaty of Plaintiff Ogris Liver damage, and the fact that plaintiff ogris is illergic to (inseds) plaintiff cannot take any pain medications to relieve pain, due to the fact that these medications of (Inseds) filter through the liver.

83) Plaintiff Ogris is forced to remain in Constant cronic pain from Migraine headaches, Joint, Pain, Muscle cramping ere, ona daily bases.

84) Plaintiff Ogris has filed Multiple medical requests with Armor, as well as Fully exhausted his administrative remedys, and Grievence procedures.

85) On 8-31-2015 Plaintiff Ogris filed a pro-se motion with Broward County Circuit Court on case 13-009880CF10A requesting HCV treatments to Cure

of HCV. (see Broward Clerk of Court case summary).

86) On 11-13-2015 Broward County Circuit Court Judge Bernard Bober issued an order to the Broward County Sheriff office - Armor Medical to treat to cure plaintiff of HCV. (see Broward Clerk of Court case summary)

87) Broward County Sheriff office, Armor Medical refused to honor the court order.

88) Plaintiff Ogris through grievences informs Broward Sheriff office, Armor medical that the parties were being delibertly indifferent to Plaintiff Ogris serious medical needs.

89) Plaintiff Ogris informed Doctor Pappilon that Armor medical treatment protocol for HCV is in conflict with the AMERICAN ASSOCIATION OF LIVER DISEASE (AASLD) and INFECTIOUS DISEASE SOCIETY OF AMERICA (IDSA) Professional medical community standard of care for HCV. (see W.W.W.hcvguidelines.org)

90) Doctor Pappilon informed plaintiff Ogris that, Broward County Commissioners, Armor Medical Administrative Executives, Broward County Sheriff Scott ISRAEL, are all fully aware of the professional medical community standard of care for HCV.

91 ) Dr. Pappilon Further informed Plaintiff Ogris, that Armor Medical is not Going to Change their Hcv Corrections Standard of health care for Hcv treatments for Plaintiff Ogris or anyone else for any reason.

92 ). On 11-17-2015 Plaintiff Ogris was found incompetent to proceed on criminal Case 13-009880Cf10A. (see broward Clerk of Court Case Summary).

93 ) On 1-25-2016 Plaintiff Ogris Was Sent to South florida Evaluation and treatment Center (state Hospital) (see broward Clerk of Court Case Summary).

94 ) While at South florida Evaluation and treatment Center Doctor Pearce Evaluated Plaintiff Ogris, and Further found Ogris incompetent to proceed, and Further found that plaintiff Ogris Does not fit the Criteria for Involuntary Commitment do to the fact ogris does not present a risk of danger to him self nor to the Community.

95 ) Doctor Pierce recommended that Plaintiff Ogris be placed in the Community resedential placement to recieve treatments for life threatening illness of chronic Hcv, and psychological treatment.

96 ) On 6-30-2016 Plaintiff was released from the Broward County Jail On Conditional release.

97 ) Plaintiff was going for Psychological treatment at Archways Inc. And was in the process of being treated for Chronic hepatitis C virus at Broward General Hospital, when Plaintiff Ogris Doctor Died in October 2016.

98 ) In November 2016, Plaintiff Ogris went to St. Paul MN to be treated for Chronic Hepatitis -C virus, when Plaintiff Ogris conditional release in Florida was violated.

99 ) On Feb 21, 2017, while Plaintiff Ogris was in MN, plaintiff had tumor removed from under his right arm pit. The tumor was a result of the hepatitis C virus, the tumor appeared after three years of remaining in the Broward County Jail, where Armor medical, Broward County Sheriff Scott Israel, Broward County Commissioners failed to treat plaintiff to Cure Plaintiff of Chronic Hepatitis C virus.

100 ). Plaintiff Had Surgery at HEALTH Partners Speciality Center, 401 Phalen Rivd, St. Paul MN 55130. Doctor Devi K Chettiar Performed The surgery on Ogris.

101 ) On March 31, 2017 While Plaintiff was
in Minnesota, Plaintiff was in the Process of recieving
the prescription to cure plaintiff of Chronic Hepatitis
c-virus from Doctor Melanie Richert Hepatologist
at Health Partners Specialty Center, 435 Phalen
Blvd 3rd Floor St. paul MN 55130, (651) 254-8600,
When Plaintiff was Extradited Back to Florida,
Broward County. (See Exhibit "1)

102 ) On May 19, 2017 Plaintiff arrived back
in Broward County florida (Broward County Jail)
Where the plaintiff was not treated to cure the
Hepatitis - C virus,

103 ) On May 24, 2017 Plaintiff wrote medical
request to Armor Giving Armor all the medical
information, that Armor already has on file as well
as the most recent additional medical information from
Health Partners, Plaintiff Informed Armor Medical that
Plaintiffs Physical Medical Condition is Rapidly
deteriorating, and that the plaintiff is in pain and
Can-not take any pain medications due to plaintiffs
medical condition. (See Exhibit "2)

104 ) On May 30, 2017 Plaintiff was called
to medical and requested of nurse Practoner
TAO to treat to cure plaintiff of chronic Hep-c

virus. (see EXHIBIT*3 )

105 ) On May 26, 2017 Plaintiff wrote Grievence requesting to be treated to Cure Hepatitis C virus. (see EXHIBIT 3 )

106 ) On June 3, 2017 When Grievence was not responded to in the proper time, Plaintiff wrote a Grievence Requesting treatments to Cure Hepatitis C virus. (see EXHIBIT*4 )

107 ) On June 18, 2017 Plaintiff wrote medical request Complaining about pain, requesting tumor removed from Plaintiff Left skull thats a result of Chronic Hepatitis C virus. (see EXHIBIT*5 )

108 ) On June 19, 2017 Nurse Practioner Raquin Din Seen Plaintiff in the Cunic at Armor, Nurse Practioner Raquin Din informed the Plaintiff that no matter How many times Plaintiff requests to be treated to Cure HCV, Armor Medical is not going to treat Plaintiff to Cure Hepatitis C virus.

109 ) On June 23, 2017 Plaintiff wrote medical grievence and addressed it to Armor Medical Director Monique Adlin and Broward County Sheriff Scott ISRAEL informing Armor Medical

and Broward Sheriff of the American Association
Study of liver Disease (AASLD) and the Infectious
Disease Society of America (IDSA) Professional
Medical Community Standard of Care for Hepatitis
C Virus, and how Armor Medical Hepatitis C virus
treatment protocol is Conflicting and Contrary to
the (AASLD)-(IDSA).

110) Plaintiff also informed the parties of
the fact that Plaintiff Ogris is in pain, and is at an
increased risk of Stroke. Plaintiff Informed Armor
Medical Director Monique Mullin and Broward County
Sheriff of the fact that Plaintiff is incompetent to
proceed on Criminal Cases and Can-not Be held in
Custody of a county Jail and be denied treatments
to cure Hepatitis C virus, and Be denied Psychological
treatments. (see EXHIBIT 6)

111) On June 29, 2017 Plaintiff wrote Medical
request to Armor Medical Director Monique Mullin
informing Armor to Stop attempting to Systematically
minipulate in the Denial of Hepatitis C treatments
by with-holding medical records from nurse
Practitioners, and Physicians. (see EXHIBIT 7)

112) On July 10, 2017 Plaintiffs Ogris Criminal
defence lawyer "Greg Ross" requested to Judge

Mark A Speiser of the 17TH Judicial Circuit Court on Case 13-009880CF10A to release Plaintiff Ogris from custody pursuant to Florida Rules of Criminal Procedure 3.219 (A)(3) and (b). Mental health court Judge Mark A Speiser was fully informed of the fact that plaintiff Ogris was being denied treatments to cure Hepatitis C virus, and Psychological mental illness By Armor Medical and Broward Sheriff SCOTT ISRAEL, While Plaintiff is in the Broward County Jail.

113 ) Mark A Speiser, Broward County Circuit Court Judge issued a court order to Broward County Sheriff Scott ISRAEL and Armor to treat Plaintiff Ogris to cure Plaintiff of Hepatitis C virus or to show cause within 72 Hours (see Exhibit "8")

114 ) Plaintiff continues to remain in Chronic pain of Major Migrane headaches which are occurring approx Two times a week, is also at an increased risk of stroke as a result of Chronic Hepatitis C virus. Plaintiff is also experiencing digestive problems, tumors, Joint pain Etc., who is incompetent to proceed on Criminal Case 13-009880CF10A - 14-016955CF10A.

115 ) Broward County Circuit Court Judge Mark A Speiser knows or should reasonably know that Plaintiff is being denied due process and equal

protection, being held in the broward County Jail
who is incompetent to proceed on Criminal cases
that plaintiff has not been Convicted of, and who is
being denied treatments to cure Hepatitis C virus
life threatening illness. where plaintiff Ogris is
not receiving any Psychological treatment.

116 ) All Parties, Broward County Commissioners,
Broward County Sheriff SCOTT ISRAEL, Armor
Medical Adminstrative EXEcutives, Aromor Medical
Employees all know or reasonably know that
their actions, acts, proceedures, policies, Customs
and practices Constitute delibert indifference to
plaintiff searious medical needs, and are being
with "recklas callous indifference" to plaintiffs searious
medical need, where all parties know their actions
are Exposing plaintiff to searious physical harm,
where Plaintiff is at high risk for Stroke and death.

117 ) ALL Defendants are denying plaintiff Due Process
and Equal protection as to Plaintiffs 5TH, 8TH, and 14TH Amend:
Rights to the U.S. ConsT: where Plaintiff seeks the U.S.
Dist. Court, Southern Dist to intervene and to issue
(Preliminary, permanant injunction, and to issue an
Emergency temporary Restraining Order) to Broward
County Sheriff Ocott ISRAEL, Broward County
Circuit Court Judge MARK A. Speiser to release Plaintiff

from Custody.

118 ) Every day that the plaintiff remains in custody of the broward County Jail with-out the treatments to Cure plaintiff of Hepatitis-C virus and without the proper nutritionally balanced Diet needed, the Plaintiff Timothy Ogris Suffers irreversable and irrepairable injury to the organs of Plaintiff body and Risk of Death.

119 ) Broward County Commissioners, Broward County Sheriff Scott Israel, Armor Medical Executives, Armor Medical Employees, Medical Director Monique Mullin, Doctor Pappilon, Nurse practioner TAO, Nurse practioner Raquin Din, Broward County Circuit Court Judge Mark A Speiser knew or have reason to know that the following Customs, Policies, Practices, of Armor Medical "HCV" treatment protocol, Causes Plaintiffs searious bodily harm, and Promotes the Spread of the fatal Silent Epidemic" and exposes the public and Community to Searious bodily harm.

120 ) ALL Defendants know, or should reasonably know that their actions and failure to intervene constitute delibert indifference to Plaintiffs Searious medical needs.

121 ) Broward Sheriff Gregory Mitchell and

Edward Pagan who are also being detained in the Broward County Jail have both been denied treatments to cure Hepatitis C Virus by the Defendants.

Hepatitis C Virus Defined:

122 ) Hepatitis C virus ("HCV") is a blood born disease caused by the Hepatitis-C Virus that brings about inflammation of the liver, Brain, as well as other parts of the body and organs that damages the liver and liver cells. "HCV" is the leading cause of liver disease and liver transplants.

123 ) Hepatitis C virus was not discovered until 1989. Blood screening was not possible until the mid-1990's. Approximately eighty percent of people who became infected with the Hepatitis-C Virus will develope Chronic Hepatitis C Virus.

124 ) Chronic Hepatitis C pacients develope Fibrosis (which is liver scarring), which will worsen liver function until the pacient developes cirrhosis (which is cancer as reffered to as Hepacellular Carcinoma). Ultimately pacients during the coarse of this disease will end up with other Scarious Illnesses, liver disease and Cancer. (See Exhibit : 9-10-11-12

125 ) Hepatitis C is transmitted by infected blood. Methods of transmission include intravenous drug use (via shared equipment), tatooing, blood transfusions, (with infected blood), misquitoes much like the Zika virus, and Sex.

126 ) Hepatitis C virus progresses to be a chronic potentially fatal blood-born viral disease that substantially and materally degrades the liver's ability to function properly to purify blood and to convert substances in the blood to glucose, inflicting progressive damage on the liver, which substantially and materially impairs the body's digestive and circulatory systems each day.

127 ) If left untreated, even asystomatic "HCV" causes irreversable damage to all organs of the body and causes destructive scarring of the liver (fibrosis), liver Cancer (cirrhosis), which may require a liver transplant, if one is luckey enough to find a match. The decline in liver function in thoes it affects causes major pain in the body to occur which affects the quality of life of thoes it affects. The progression of Hepatitis C from fibrosis 0 to fibrosis 4, is not linear; Sudden progression is an expected manifestation of the disease.

128 ) The Centers for Disease Control (CDC) recommends that each person in the United States born between 1945 and 1965 be tested at least once for Hepatitis C, for no other reason then Date of birth. The Centers for Disease Control (CDC) estimate the potentially Fatal blood-borne Hepatitis-C Virus (HCV) infects Some 4 million Americans of all ages and walks of life, and the numbers are Continuing to Climb. (Thats about 2% of the Population), and causes more deaths yearly then HIV/aids. Alot of the new Infections Seem to be originating in the mid-Western and East Coast of The United States. (see EXHIBIT 9 )

129 ) It is widely accepted that the number of reported cases of Hepatitis-C nationwide under-States its actual Prevalence. in 2000, the United States Surgeon General Called Hepatitis C a "Fatal Silent epidemic" and estimated that as much as two percent of the adult U.S. Population has Hepatitis C Virus unfortunately many don't even know it.

130 ) The incidence of Hepatitis C is not diminishing and its effects are worsening. In 2011, the Centers for Disease Control (CDC) reported that Hepatitis C Virus had over taken HIV as a

cause of death.

131 ) The Centers for Disease Control (CDC) recognizes incarceration as a risk factor for contracting HCV - because of the high percentage of HCV infected incarcerated Persons and the risk of HCV exposure in Jails and prisons.

132 ) Between 20-50% of America's 2.3 million inmates are HCV-positive and according to the C.D.C. therefore, most incarcerative Persons and 98% of the general population are at risk from unscreened, untreated inmates.

133 ) Eleminating (HCV) from Jails and correctional facilities filters (HCV) from the entire nations blood pool by making Jails and prisons sites where treatment is readily available to at risk populations to stop transmissions of the virus out side of prisons and Jails.

134 ) Hepatitis C virus can be spread by mere contact with an infected individuals blood, under such circumstances as: (a) Physical activity in Sports, (b) Tatooing, (c) use of needle not properly cleaned or Sterilized, (d) exposure to an infected persons blood in the coarse of medical care, (e) barber and

Cosmetology care, (F) mosquitoes, (g) sexual activity,
(h) Sharing of eating utensils and food, (I) Sharing
of razors or other Personal grooming Supplies,
(J) Sharing bathrooms or shower facilities, (k) Sharing
living quarters or (L) Physical violence between
inmates or staff - Police - citizens etc',

135) As a communicable disease, HCV poses
an unreasonable and substantial risk of serious
Present and future medical and Physical harm to
the Plaintiffs, community and general Public after
incarcerated persons release from Jail or prison.
(Roe vs. Elyea 631 f.3d. 843 (9th cir 2011), Helling vs.
Mckinney 509 U.S. 25, 33 (1993).

136 ) Hepatitis C virus substantially and
materially impairs the individuals' and the
Plaintiffs major life activities of (a) self-esteem,
(b) self-caring (c) social interactions with other persons
(d) manual tasks particularly thoes involving knives,
Sissors, pins, needles, toothbrushes, eating utensils
or shaving razors (e) walking and locomotion in view
of the progressive attack and pain infliction in
the brain, (major migraine Head-achs), and in the
joints that are medically identified as manifestations
of Hepatitis C virus in these Plaintiffs and many
other Hepatitis-C patients (f) reproduction, and

(G) Digestive problems, bowel movements, Difficulties using the bathroom, kidney pain, dermatologic problems, chronic fatigue. (H) life itself.

137) Each day treatments for cure is postponed, irreversable damage is done to the body and the more frequent pain, and the more severity of pain becomes, the more likely-hood of tumors manifesting themselves, cirrhosis of the liver, liver cancer and death from Hepatitis c grows for each member of the class as does the likelyhood of infection for thoes with whom they come in contact with in the Broward County Jail Facilities, as well as for members of the general public, community after they are released into the general Public, out side of Jail or prison.

AALSD/IUSA Guidance Panel and Standard of Care

138) the 12 week cure was not possible until late 2013 with (F.D.A.) approval of direct acting anti-viral (DAA) oral medications, "Sovaldi" and "Olysio", and the 12 week oral cure with out Toxic Interferon injections was not possible untial late 2014 with (F.D.A) approval of Harvoni and Viekira Pak.

139) In late 2013, the American Association

for the Study of liver Disease (AASLD) and the
Infectious Disease Society of America (IDSA) The two
leading Professional bodies for Specialists treating
Hepatitis c virus established the Hepatitis c virus
Guidance Panel to Provide Medical Practioners with
up to date recommendations for the use of the
DAA drugs. Per Armor Policy on Hepatitis c virus
treatments, Defendants admit that their Protocol
treatment for HCV falls way Short of the Professional
medical community Standard of care for (HCV) Admitting
that Defendants are delibert indifferent to plaintiffs
Searious medical needs.

140) On June 29, 2015, The (AASLD/IDSA) Guidance
Panel Established Non-Interferon Direct Acting Anti-
Viral (DAA) Drugs, "Harvoni" and "Viekira-Pak" as
the recommended medical Community Standard-
of-care for HCV-Infected Pacients, for all Pacients
at all levels of infections. Other (DAA) drugs have
come to market Since that time that are also
recommended by the (AASLD/IDSA) Guidance Panel.

141) The new (AASLD/IDSA) Professional Medical
Community Standard of care (a) Specifically rejects
Interferon treatments; (b) recommends immediate
treatment with the new medication for all Hepatitis
c virus infected Pacients with-out Pre condition to

reach full sustained viral responce *to cure* :
hepatitis C virus as soon as possible', (c)
Specifically rejected rationing (Prioritizing) of
Direct Acting Anti-viral (DAA) medications by
prescribing physicians,' and (d) Specifically rejected
misplaced interpretation of prior (AASLD/IDSA)
Guidance to excuse rationing or prioritization
by fibrosis scores of *4 or any other criterion
other then Less-then-six-months *expected life span*
for reasons not related to Hepatitis C virus.

142) Cost of Providing the Professional medical
Standard of care, after a Hepatitis C virus diagnosis
is not a lawful defence for delaying or refusing to
treat incarcerated persons under the 5th or 8th & 14th
Amend of the U.S. Const (Bell vs Wolfish 441 U.S. 520
(1979), Estelle vs. Gamble 424 U.S. 97 (1976)

143) Erickson vs. Pardus 551 U.S. 89, 90 (2007),
acknowledges that conscious delay, denial, or inter-
fearence in medical treatment of Hepatitis C for non-
medical reasons standing alone - states a plausable
claim against prison officials for deliberit indifference to
the searious medical needs of an incarcerated person
in violation of the U.S. Const. Amend. 8th 14th through
42 U.S.C. 1983.

144) Defendants Broward County Commissioners, Broward County Sheriff Scott Israel, Armor Medical Executives and Administrative officals, Armor Medical Director Monique Mullin, Doctor Pappilon, Nurse Practioner TAO, and Nurse Practioner Raquin Din, all know or should reasonably know of the (AASLD/IDSA) Guidance Panel web site (w.w.w.hcvguidelines.org) and the Professional medical Community standard of Care for Hepatitis-C treatment. All Defendants know or should reasonably know Armor Medical Policy treatment protocol for HCV is in direct Conflict and Contrary to the (AASLD/IDSA) Professional medical Community Standard of Care for Hepatitis C virus infected pacients.(See United States VS. Kubrick 444 U.S. 111 (1979) for discussion of medical Standard of care).

145) At all times relevant to this lawsuit, Defendants, Broward County Commissioners, Broward County Sheriff Scott Israel, Armor Medical Executives Armor Administrators, medical Director Monique mullin, Doctor Pappilon, nurse practioner TAO, nurse practioner Raquin Din jointly and Severally Did knowingly and with callious, deliberate indifference, Systematically deny Plaintiffs the (AASLD/IDSA) Current Professional medical Community standard of individualized medical care to cure Plaintiffs Hepatitis C virus

causing Plaintiffs Substantial bodily harm, as well as others Similarly Situated placing the Community and Public at risk for further Spread of the virus, causing a Major public health Concern.

Discriminatory Denial of Medical Services and Deliberate Indifference to Hepatitis C Virus-Infected Incarcerated Persons, as Compared to HIV/AIDs-Infected Incarcerated Persons.

146) Armor Medical has a Policy that requires the Defendants Armor Medical to provide "infectious disease screenings" upon incarcerated persons Intake. These screenings take place for HIV/AIDs regularly, But such screenings do not include Hepatitis-C virus infection.

147) Armor medical Policy obligates Armor to provide treatment for HIV/AIDs in a manner Consistent with applicable Standards of medical Care, Pursuant to the Centers for Disease control guidelines Standard of Care. The Contractor Shall be responsible for all medical costs Associated with the Screening and treatment of HIV/AIDs. (emphasis added).

148) However with respect to Hepatitis C treatment the Contract States that the Services for the diagnosis and treatment of Hepatitis C Under the then Current treatment guidelines

and the then current Hepatitis C treatment protocols
established by Armor as incorporated herein.

149 ) The Contract States and specifically instructs
Defendant Armor that it must treat incarcerated persons
with the life-threatening, incurable blood-borne infection
HIV/AIDS according to the current Professional medical
community standard-of-care, but discriminates against
incarcerated persons with the life threatening, but curable,
blood-borne Hepatitis C VIRUS infection by limiting treatment
to internal protocols of defendants Armor medical.

150 ) At all times relevant to this lawsuit, Defendants
Broward County, Broward County Sheriff SCOTT ISRAEL,
Armor, its agents, employees, representatives, contractors,
including Armor, provide free, routine screening for HIV/AIDS,
within 14 days of intake, or in response to a medical request
written to health care Services, with treatments available
at all Facilities.

151 ) In Contrast, at all times relevant to this lawsuit,
Defendants, Broward County, Broward County Sheriff SCOTT ISRAEL,
Armor, its Agents, employees, representatives, Contractors including
Armor provide No routine screening for HCV during or after intake
to identify sources of infection, or to protect incarcerated persons
from Sources of infection. There is no excuse for Discriminatory
Denial of medical Services in accordance with The Professional

STANDARD OF MEDICAL CARE, BECAUSE OF THE DISABILITY

OF HEPATITIS C. RATHER THEN HIV/AIDS.

### PROTECTION OF UN-INFECTED INMATES AND THE PUBLIC

152) HELLING VS. McKINNEY, 509 U.S. 25, 33 (1993), HOLDS

THAT IT IS A VIOLATION OF EIGHTH AMENDMENT PROHIBITIONS

AGAINST CRUEL AND UNUSUAL PUNISHMENT KNOWINGLY TO

HOLD INCARCERATED PERSONS IN CONDITIONS THAT LEAD TO FORE-

SEEABLE EXPOSURE TO LIFE-THREATENING CONDITIONS, INCLUDING

HEPATITIS C VIRUS (HCV).

153) THE DEFENDANTS ARMOR MEDICAL PROMULGATED THE ARMOR

HEPATITIS-C TREATMENT PROTOCOL AS A SUBSTITUTE FOR

THE JUNE 29, 2015 AASLD/IDSA (www.hcvguidelines.org)

STANDARD OF PROFESSIONAL MEDICAL CARE THAT PRESCRIBES (DAA)

DIRECT-ACTING ANTIVIRAL MEDICATION TREATMENT FOR ALL

HCV INFECTED INCARCERATED PERSONS.

154). FOR NON-MEDICAL REASONS OF POLICY AND PRACTICE, OF BROWARD COUNTY, BROWARD COUNTY SHERIFF SCOTT ISRAEL, ARMOR MEDICAL, MEDICAL DIRECTOR MONIQUE MULLIN, DR PAPPILON JOINTLY AND SEVERALLY AT ALL TIMES RELEVANT TO THIS LAWSUIT HAVE SYSTEMATICALLY DELAYED AND DENIED AND CONTINUE TO DELAY AND DENY PLAINTIFF AND ALL OTHERS SIMARILY SITUATED REQUESTS FOR TREATMENTS WITH THE (DAA) DRUGS THAT ARE THE AASLD/IDSA MEDICAL COMMUNITY STANDARD OF CARE FOR HCV.

155). THE DEFENDANTS JOINT AND SEVERAL WILLFULL, DELIBERT ACTIONS OF FAILING TO TREAT PLAINTIFF TO CURE OF HCV MAKES PLAINTIFF PHYSICAL AND MENTAL PROGRESSION OF THE DISEASE FORSEEABLY WORSE AND INCREASED PUBLIC EXPENSE INEVITABLE.

156). DAY BY DAY, UNINFECTED INCARCERATED PERSONS, AND THE PUBLIC AT LARGE, RUN INCREASING RISKS OF HCV INFECTION WHICH DEFENDANTS COULD "CURE", OF THESE INCARCERATED PERSONS SERIOUS MEDICAL

NEEDS OF FREEDOM FROM, AND KNOWLEDGE OF, INFECTION BY

HCV., THE DEFENDANTS, JOINTLY AND SEVERALLY, ARE DELIBERATELY

INDIFFERENT, FOR REASONS OF NON-MEDICAL POLICY AND PRACTICE.

157) IN THE CASE OF INCARCERATED PERSONS WHO ARE RELEASED

WITHOUT HAVING BEEN TREATED, WHO WILL REQUIRE   TREATMENT

FOR THE HEPATITIS C AND ALSO THE COMPLICATIONS THEREFROM,

SUCH DELAY AMOUNTS TO PACIENT-DUMPING ON THE HOSPITALS

AND MEDICAL PROVIDERS WHO WILL INHERIT THESE PATIENTS,

AND MANIFESTS A CLEAR AND PRESENT PUBLIC HEALTH DANGER TO

NON-INFECTED HEPATITIS-C PERSONS WHO ARE INCARCERATED AND TO

THOES OUT SIDE IN THE GENERAL PUBLIC.

158) IN ALL RELEVANT ASPECTS, DEFENDANTS HAVE ACTED,

AND ARE ACTING, UNDER COLOR OF LAW, CUSTOM AND POLICY.

CLAIMS FOR RELIEF

## CLAIM I

### CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE 5TH, 8TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

159). PLAINTIFFS REALLEGE AND REASSERT EVERY CLAIM AND

INCORPORATED EXHIBITS WHICH CONSTITUTE AVERMENTS OF

IMMINENT DANGER OF SERIOUS PHYSICAL, MENTAL, MEDICAL INJURY.

160). BY ARMOR MEDICAL POLICIES, PRACTICES, AND ACTS,

DEFENDANTS ARE VIOLATING, OR HAVE VIOLATED, THE RIGHTS OF

PLAINTIFFS TIMOTHY THOMAS OGRIS AND THOES SIMILARLY SITUATED,

TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT GUARANTEED

BY THE 5TH, 8TH AND 14TH AMENDMENTS TO THE UNITED STATES

CONSTITUTION AND 42 U.S.C. 1983 AS A RESULT OF THEIR

DELIBERATE REFUSAL TO TREAT TO CURE PLAINTIFFS HEPATITIS C

INFECTION IN ACCORDANCE WITH AASLD/IDSA HCV MEDICAL

TREATMENT COMMUNITY STANDARD OF CARE.

161) All Defendants Acknowledege That The AASLD/IDSA HCV Guidance Panel Medical Standard Of Care Requires Treating "ALL" HCV Positive Pacients With Direct Acting Anti-Viral (DAA) Drugs, And Through Defendants HCV Medical Policies Admit To Have Deliberatly, Knowingly And Intentionally Have Adopted A Non-Medical "Correctional" Standard Of Care That Does Not Provide DAA Drug Treatment For The Plaintiffs And Vast Majority "All" Of HCV Positive Incarcerated Persons, Contrary To The Medical Standard Of Care, In Violation Of The 5th, 8th and 14th Amendments To The United States Constitution.

162). Allegations For Falure To Provide Treatment For Hepatitis C Infection State A Claim For A Searious Medical Need. Erickson vs. Pardus 551 U.S. 89, 90 (2007).

PARTICULARLY WHEN, AS HERE, DEFENDANTS HEPATITIS C

PROTOCOL SPECIFICALLY EXCLUDE FROM TREATMENT MAJORITY

IF NOT ALL HCV POSITIVE INCARCERATED PERSONS.

### CLAIM II

U.S. CONST AMEND 5TH, 8TH AND 14TH, THROXOH
42 USC 1983; PLAINTIFF TIMOTHY OGRIS AGAINST
DEFENDANT BROWARD COUNTY, BROWARD COUNTY
SHERIFF SCOTT ISRAEL, ARMOR MEDICAL, DR PAPILON,
ARMOR MEDICAL DIRECTOR MONIQUE MULLIN NURSE Practioners
TAO, RAQUAN DIN IN their official and INDIVIDUAL CapaciTYS.

163) PLAINTIFFS REALLEGE AND REASSERT EVERY CLAIM AND

INCORPORATED EXHIBIT WHICH CONSTITUTE AVERMENTS OF IMMINENT

DANGER OF SEARIOUS PHYSICAL, MEDICAL INJURY. PLAINTIFF OGRIS

AND ALL PERSONS SIMILARLY SITUATED WHO ARE ENTERING THE

BROWARD COUNTY JAIL, THOES PERSONS IN PUBLIC (FREE WORLD)

WHO HAVE BEEN CURED OF HCV, OR ARE OTHERWISE HCV NEGITIVE

AND EACH DAY FACE "IMMINENT DANGER OF SERIOUS

PHYSICAL INJURY" FROM BEING POTENTIALLY EXPOSED TO A

DEBILITATING AND POTENTIALLY FATAL HCV, THAT DEFENDANTS

COULD ERADICATE FROM THE BROWARD COUNTY JAIL POPULATION

AND BROWARD COUNTY WITH THE AASLD / IDSA MEDICAL

COMMUNITY STANDARD OF CARE, AND DECLINE TO DO SO FOR NON-

MEDICAL REASONS.

164). DEFENDANTS BROWARD COUNTY, BROWARD COUNTY SHERIFF

SCOTT ISRAEL, ARMOR MEDICAL, ARMOR MEDICAL DIRECTOR

MONIQUE MULLINS, DR. PAPPILON THROUGH THE ACTIONS OF THEIR

AGENTS, EMPLOYEES OR REPRESENTATIVES, DEFENDANTS ARE

ALL WELL AWARE OF, AND ARE BEING DELIBERATELY INDIFFERENT

TO, PLAINTIFF'S TIMOTHY OGRIS, AND ALL OTHER PERSONS, SIMILARLY

SITUATED TO THEM, RESPECTIVE SERIOUS MEDICAL NEEDS,

SPECIFICALLY, SPENDING EACH DAY FACING, IMMINENT DANGER

OF SERIOUS PHYSICAL INJURY" FROM BEING EXPOSED TO THE

DEBILITATING AND POTENTIALLY FATAL VIRUS, HCV, FROM OTHER

PERSONS WHO ARE INCARCERATED OR WHO WILL BE INCARCERATED.

   165). DEFENDANTS BROWARD COUNTY, BROWARD COUNTY SHERIFF

SCOTT ISRAEL, ARMOR MEDICAL, ARMOR MEDICAL DIRECTOR MONIQUE

MULLINS, DR. PAPPILON ALL HAVE A RESPONSIBILITY TO ASSURE

PROPER SAFE AND HEALTHY, HCV-FREE, LIVING CONDITIONS AND CARE

FOR PLAINTIFF TIMOTHY OGRIS, AND ALL PERSONS SIMILARLY

SITUATED. HELLING VS. MCKINNEY 509 U.S. 25, 33 (1993).

   166). DEFENDANTS BROWARD COUNTY, BROWARD COUNTY SHERIFF

SCOTT ISRAEL, ARMOR MEDICAL, ARMOR MEDICAL DIRECTOR MONIQUE

MULLINS, DR. PAPPILON ALL THROUGH THEIR ACTIONS OF THEIR

AGENTS, EMPLOYEES OR REPRESENTATIVES, AND THE GRIEVENCES

OF THE PLAINTIFF AND PROFESSIONAL CONTINUING EDUCATION

ALL KNOW OR SHOULD REASONABLY KNOW AND HAVE ACTUAL

KNOWLDEGE OF A SUBSTANTIAL RISK THAT PLAINTIFFS TIMOTHY

OGRIS AND ALL OTHERS SIMILARLY SITUATED WHO HAVE

HCV, WHO HAVE BEEN CURED OF HCV, THE PUBLIC (FREE WORLD)

HAVE A SEARIOUS MEDICAL NEED, SPECIFICALLY, SPENDING EACH

DAY FACING "IMMAINENT DANGER OF SEARIOUS PHYSICAL INJURY"

FROM BEING EXPOSED TO THE DEBILITATING AND POTENTIALLY

FATAL VIRUS, HCV, FROM OTHER PERSONS INCARCERATED, OR

WHO WERE INCARCERATED WHO WERE INFECTED WITH THE

HEPATITIS C VIRUS.

167) DEFENDANTS, BROWARD COUNTY, BROWARD COUNTY SHERIFF

SCOTT ISRAEL, ARMOR MEDICAL, ARMOR MEDICAL DIRECTOR MONIQUE

MULLINS, DR PAPPILON ALL THE ACTIONS OF THEIR AGENTS,

EMPLOYEES, OR REPRESENTATIVES, ARE DELIBERATELY

INDIFFERENT TO, OR DISREGUARDED, THE SUBSTANTIAL

RISK OF "IMMINENT DANGER OF SEARIOUS PHYSICAL INJURY"

TO PLAINTIFFS FROM BEING EXPOSED TO THE DEBILITATING

AND POTENTIALLY FATAL VIRUS, HCV, FROM OTHER INCARCER-

ATED PERSONS, OR WHO WERE INCARCERATED INFECTED

WITH THE HEPATITIS C VIRUS, AND SUBSEQUENT PROGRESSION OF

THE HEPATITIS C INFECTION.

168). PLAINTIFF TIMOTHY OGRIS AND ALL OTHERS SIMILARLY

SITUATED PERSONS, AS THE DIRECT RESULT OF THE FAILURES

AND POLICY DECISIONS OF DEFENDANTS BROWARD COUNTY,

BROWARD COUNTY SHERIFF SCOTT ISRAEL, ARMOR MEDICAL,

ARMOR MEDICAL DIRECTOR MONIQUE MULLINS, DR PAPPILON

DELIBERT, RECKLESS DISREGUARD TO THE SEARIOUS MEDICAL NEEDS

OF STAYING FREE FROM HEPATITIS C INFECTION, SUFFERS

PHYSICAL AND MENTAL INJURY SPECIFICALLY, MAJOR

MIGRANE HEADACHES, PAINFULL MUSCLE CRAMPING, JOINT

PAIN, DIGESTIVE PROBLEMS, MENTAL ILLNESS, TUMORS, SPENDING

EACH DAY "FACING IMMINENT DANGER OF MORE SEVERE PHYSICAL

INJURY" THATS IRREVERSABLE, WHICH CONTINUES TO WORSEN

FROM BEING EXPOSED TO THE SEVERE DEBILITATING AND POTENT-

LALLY FATAL VIRUS, HCV, AND THE PROGRESSION OF THE RESPECTIVE

INFECTION, INCREASED SYMPTOMS, PAIN, SUFFERING, FEAR,

DIMINISHED CAPACITY AND THE ENJOYMENT OF LIFE, AS WELL

AS DECREASED LIFE EXPECTANCY.

169). DEFENDANTS, BROWARD COUNTY, BROWARD COUNTY SHERIFF

OFFICE SCOTT ISRAEL, ARMOR MEDICAL, ARMOR MEDICAL DIRECTOR

MON'QUE M'OLLINS, DR. PAPPILON, THROUGH THEIR AGENTS,

EMPLOYEES, OR REPRESENTATIVES, JOINTLY AND SEVERALLY

ACTED UNDER COLOR OF LAW.

### CLAIM III

PLAINTIFF TIMOTHY OGRIS AND ALL OTHERS SIMILARLY
SITUATED TO PLAINTIFFS; DENIAL OF EQUAL PROTECTION
OF THE LAW UNDER THE UNITED STATES CONSTITUTION
14TH AMENDMENT, THROUGH 42 U.S.C. 1983, AND
DISCRIMINATORY DENIAL OF MEDICAL SERVICES IN
VIOLATION OF § 504 OF THE REHABILITATION ACT
OF 1973 AND TITLE II OF THE AMERICAN WITH DISABILITIES
ACT;

170) PLAINTIFF REALLEGE AND REINCORPORATE EACH AND

EVERY CLAIM AND AVERMENT ABOVE AND INCORPORATE THEM

BELOW.

171). BOTH HCV AND HIV/AIDS ARE BLOOD BORNE VIRAL

DISEASES THAT ARE TRANSMITTED BY PERSONAL CONTACT BETWEEN

INDIVIDUALS.

172) THE HIV/AIDS CAN BE SUPPRESSED TO REDUCE OR

PREVENT TRANSMISSION OF THE VIRUS, BUT ONLY HCV CAN

BE CURED IN 12 WEEKS OF ORAL MEDICATION.

173). ARMOR MEDICAL WITHHOLDS TREATMENT FOR HCV

IN A MANNER THAT DIFFERS SIGNIFICANTLY FROM TREATMENT

IT PROVIDES FOR HIV/AIDS WITHOUT MEDICAL JUSTIFICATION,

OR A RATIONAL BASIS FOR DOING SO SINCE THE 12-WEEK

AASLD/IDSA MEDICAL STANDARD-OF-CARE HAS BEEN ADOPTED.

174). ARMOR MEDICAL PROTOCOLS REQUIRE THAT HCV

INFECTIONS PROGRESS TO THE POINT OF CAUSING CIRRHOSIS

OR SCARRING OF THE LIVER, WHICH CANNOT BE REVERSED.

175). THIS HCV POLICY IS AKIN TO A POLICY THAT

PERMITS HIV INFECTION TO BECOME FULL-BLOWN AIDS,

OR TO MANIFEST LIFE THREATENING CONDITIONS INCLUDING

PNEUMONIA OR KAPOSI'S SARCOMA, BEFORE APPROVING

ANTI-RETROVIRAL DRUG TREATMENTS.

176). THE ARMOR MEDICAL POLICY OR DIFFERENTIAL TREATMENT FOR HCV, IN COMPARISON TO HIV/AIDS, LACKS RATIONAL BASIS UNDER PREVAILING SCIENCE AND MEDICINE, AND CLEARLY ESTABLISHED LAW.

177). ARMOR MEDICAL POLICY OF REFUSAL TO TREAT HCV INFECTION OF INCARCERATED PERSONS UNTIL MANIFESTING HIGH FIBROSIS SCORES, LACKS A RATIONAL BASIS IN VIOLATION OF PLAINTIFF'S RIGHTS TO EQUAL PROTECTION LAWS UNDER THE UNITED STATES CONSTITUTION AMENDMENT 5TH, 8TH AND 14TH FOR WHICH 42 U.S.C. 1983 PROVIDES DECLARATORY AND PROSPECTIVE EQUITABLE RELIEF, AND A DISCRIMINATORY DENIAL OF MEDICAL SERVICES BECAUSE OF HEPATITIS C INFECTION, A DISABILITY, (PURSUANT TO 28 U.S.C.A 12102)

IN VIOLATION OF § 504 OF THE REHABILITATION ACT

AND TITLE II OF THE AMERICAN WITH DISABILITIES ACT,

WHICH PROVIDE DECLATORY; PROSPECTIVE EQUITABLE, AND

LEGAL REMEDIES.

178). THESE ALLEGATIONS CONSTITUTE AVERMENTS OF

IMMINENT DANGER OF SEARIOUS PHYSICAL, MEDICAL INJURY.

179). ARMOR MEDICAL POLICY OF DISCRIMINATORY DENIAL

OF PUBLIC SERVICES BECAUSE OF THE PLAINTIFFS DISABILITY,

HEPATITIS C INFLICTED DAMAGES ON THE PLAINTIFFS FOR

WHICH § 504 AND TITLE II PROVIDE LEGAL REMEDIES.

PRAYER FOR RELIEF

180). WHEREFORE, PLAINTIFFS REQUEST THAT THIS COURT

GRANT THEM THE FOLLOWING RELIEF;

(A) CERTIFY THAT THIS ACTION BE MAINTAINED AS A CLASS

ACTION OF ALL PERSONS INCARCERATED OR WHO WILL BE

INCARCERATED IN THE BROWARD COUNTY JAIL WHO HAVE

HEPATITIS C ACCORDING TO RNA TESTING;

(B) ISSUE A JUDGEMENT AGAINST DEFENDANTS, DECLAIRING

THAT THEIR ACTS, OMISSIONS, POLICIES, AND PRACTICES WITH

REGUARD TO THE TREATMENT OF HEPATITIS C ARE CRUEL AND

UNUSUAL PUNISHMENT IN VIOLATION OF THE 5TH, 8TH AND

14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND

42 USC 1983, AND THE EQUAL PROTECTION CLAUSE OF THE

FOURTEENTH AMENDMENT AND 42 USC 1983 AND DISABILITY

DISCRIMINATION IN VIOLATION OF 3.504 OF THE REHABILITATION

ACT OF 1973 AND TITLE II OF THE AMERICAN WITH DISABILITIES

ACT;

(C) ISSUE PRELIMINARY AND PERMANENT INJUNCTIONS

TO ENJOIN THE HEPATITIS C PROTOCOL OF ARMOR MEDICAL

ORDERING DEFENDANTS TO IMPLEMENT AND ADHERE TO A

COMPREHENSIVE TREATMENT AND TESTING PROTOCOL IN

ACCORDANCE WITH THE AASLD/IDSA STANDARD OF CARE,

(W.W.W.hcvguidelines.ORG);

(d). ENJOIN DEFENDANTS FROM TAKING ANY ACTION TO

INTERFERE WITH PLAINTIFFS RIGHT TO MAINTAIN THIS ACTION, OR

FROM RETALIATING IN ANY WAY AGAINST PLAINTIFFS FOR

BRINGING THIS ACTION;

(E) APPOINT PLAINTIFFS COUNSEL AND REASONABLE ATTORNEY

FEE'S AND COSTS IN ACCORDANCE WITH 42 U.S.C. 1988 AND

OTHER APPLICABLE LAW;, 28 U.S.C. 1915 (E)(1)

(F). AWARD PLAINTIFF COMPENSATORY DAMAGES AND

PUNITIVE DAMAGES IN EXCESS OF 3,000,000.00 DOLLARS

Page 62 of 60

(G) AWARD PLAINTIFF PUNITIVE DAMAGES IN EXCESS OF 395,000.00

DOLLARS, AGAINST DEFENDANTS FOR VIOLATIONS OF SECTION

504 AND THEIR TITLE II RIGHTS AND SUCH SUM MAY AWARD

AND;

(H) ISSUE AN ORDER TO THE DEFENDANTS TO IMMEDIATELY

START TREATING THE PLAINTIFF WITH THE (DAA) STANDARD OF CARE

PROSCRIBED BY (AASLD/IDSA) AND OR RELEASE THE PLAINTIFF

FROM CUSTODY.

(I) GRANT SUCH OTHER AND FURTHER RELIEF AS THIS COURT

CONSIDERS JUST AND PROPER.

(J) PLAINTIFFS DEMAND TRIAL BY JURY
(EXHIBITS ATTACHED #1 THROUGH #18)

RESPECTFULLY SUBMITTED                    Timothy Thomas Ogris

                                          Edward Pagan

DATE 6-22-2017                            Gregory Mitchell

    I TIMOTHY OGRIS DO HEREBY SWEAR ALL THE STATEMENTS MADE HEREIN
ARE TRUE AND CORRECT UNDER THE PENALTY OF PERJURY

Page 64 of 64

PRIORITY

PRIORITY

th Priority Mail.®
n of federal law.

MR. TIMOTHY THOMAS OSBIS
50170 1879
NORTH BROWARD BUREAU
P.O. BOX 407037
FLAUDERDALE, FL 33340

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FEDERAL CLERK OF COURT
301 NORTH MIAMI AVE, SUITE #
MIAMI, FLORIDA 33128

USPS INSPE

BY

U.S. P
MAIL
33
JUL
A

1005          33128          $
R2304

Expected Delivery Day:
USPS TRACKING N

9505 5144 0118 7205 1t



United States District Court
Southern District of Florida

Case Number: _____

*OGRIS*

# SUPPLEMENTAL ATTACHMENT(S)

Please refer to the supplemental paper "court file" in the division where the Judge is chambered. These attachments must <u>not</u> be placed in the "chron file".

☐ **NOT SCANNED**

    ☐ Due to Poor Quality

    ☐ Bound Extradition Papers

    ☐ Photographs

    ☐ Surety Bond (Original <u>or</u> Letter of Understanding)

    ☐ CD or DVD (Court Order <u>or</u> Trial Purposes only)

    ☐ Other: _____

☒ **SCANNED**

    ☒ But Poor Quality

    ☐ Habeas Cases (State Court Record/Transcript)

Date: 7/26/17